WILL H. SMITH v. THE STATE.

No. 4879.   Decided February 13, 1918.

Rehearing denied May 29, 1918.

**1.—Theft—Accomplice—Charge of Court—Witness.**

Where, upon trial of theft of an automobile, the codefendant had not been sentenced, he was a competent witness for the State, and the court submitting a proper charge on accomplice testimony, there was no error.

**2.—Same—Evidence—Bill of Exceptions.**

Where, upon trial of theft, defendant complained of the testimony of an accomplice, but the bill of exceptions was entirely defective, the same can not be considered on appeal; besides, the testimony was admissible, or at least did not justify a reversal.

3.—Same—Sufficiency of the Evidence. ·

Where, upon trial of theft of an automobile, the evidence was sufficient to sustain the conviction under a proper charge of the court, there was no reversible error.

4.—Same—Accomplice—Corroboration.

Where, upon trial of theft of an automobile, the evidence was amply sufficient to show that defendant and the main State's witness were principals in the theft, and that said State's witness' testimony was sufficiently corroborated under the law, there was no reversible error.

Appeal from the Criminal District Court of Dallas No. 2.   Tried below before the Hon. C. A. Pippin.

Appeal from a conviction of the theft of an automobile; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John White,* for appellant.—On question of insufficiency of evidence: Lehman v. State, 18 Texas Crim. App., 174; Robinson v. State, 22 id., 690; Field v. State, 24 id., 422.

On question of admitting testimony of accomplice:   Williams v. State, 40 Texas Crim. Rep., 497; Guajardo v. State, 24 Texas Crim. App., 603.

On question of principals:   Taylor v. State, 62 Texas Crim. Rep., 611; Jenkins v. State, 30 Texas Crim. App., 379.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of competency, who is convicted of a felony, but not yet sentenced: Flourney v. State, 59 S. W. Rep., 902; Arcia v. State, 26 Texas Crim. App., 193; Johns v. State, 32 Texas Crim. Rep., 135; Foster v. State, 39 id., 399; Stanley v. State, 39 id., 428; Robinson v. State, 36 id., 104; Underwood v. State 38 id., 193.

PRENDERGAST, Judge.—This is an appeal from a conviction for the theft of an automobile, with the lowest punishment assessed.

Briefly summarized, the testimony shows that Mr. Hildreth, who lived in Blue Ridge, in Collin County, was in Dallas a short time before June 18th to buy an automobile, and there met appellant and so told him. Mr. O'Rourke's automobile was stolen from Cycle Park in Dallas about 9 or 10 o'clock in the night of June 18th.   Later that night appellant, with Will O'Leary, reached Mr. Hildreth's home with Mr. O'Rourke's car.   Appellant knocked on Mr. Hildreth's door, called him out of the bed, and told him, "I have brought you the car."   Mr. Hildreth asked him, "What car?" and he said, "The car I was telling you about down at Burleson's"—the place they had met in Dallas.   Appellant then tried to sell him the car.   At this time appellant introduced said O'Leary to Mr. Hildreth under the name of Tom Hawkins. · After some further parleying, because it was so late, Mr. Hildreth induced them to wait

over until morning.   Appellant then backed the car into Mr. Hildreth's barn, and they remained there until the next morning.   Mr. Hildreth was suspicious of them and early the next morning sent for the constable, who came to his house and arrested them and took charge of the car. The car was later identified as Mr. O'Rourke's and delivered to him.

Appellant testified that on the night of June 18th when he met Hawkins in Dallas, Hawkins already had the car and wanted him to take him to the man whom he said wanted to buy a car, and he went to Hildreth's with him.   That he had no interest in the car, but Hawkins was to pay him $5 for taking him to Hildreth's.   Hildreth said appellant, that night, told him Hawkins owned the car and had owned it for two months.

Will O'Leary (Tom Hawkins) swore that appellant met him in Dallas before the night of June 18th and told him "he knew where he could sell one (a car) if we could get it."   "He told me we could sell the car at Blue Ridge."   That on the night of June 18th, about 7:30 or 8 o'clock, they met again, when the subject was again referred to, and appellant told him he would go get some money for gasoline, "and we will go get the car."   That he got $2 and they went and got the car and drove it to Blue Ridge, with the result as stated.   That he did not tell appellant it was his car—"he knew it was not my car."   That appellant suggested he take the name of Tom Hawkins; he said, "You can't go by your name, because they could identify you."   That they were to split the money, half and half, they were to get for the car.

O'Leary (Hawkins) was an accomplice, and the judge so told the jury in a proper charge, requiring corroboration.   He had already pleaded guilty to stealing said car, but had not been sentenced.   The court, therefore, properly overruled appellant's objection to his competency as a witness.   Art. 788, C. C. P., and cases cited in note 19, p. 701, 2 Vernon's Crim. Stats.

Appellant has another bill wherein he complains of the testimony of said accomplice witness that he first met appellant in the county jail. This bill is entirely too meager.   It does not show the surroundings so as to show error or authorize this court to hold it error.   From the testimony of this witness on the subject, if we could look to the statement of facts, we gather that the witness himself was in jail, confined on some charged offense, and that appellant was there to see him about making bond for him—not himself confined in jail.   At any rate it is not shown to be any such error as to justify a reversal.

The evidence was sufficient to show that appellant himself, together with O'Leary, actually stole the car.   It also raised the question, and was sufficient to show, that he was a principal with O'Leary even if O'Leary himself personally stole the car.   Both of these issues were submitted by the court in his charge to the jury, to which charge there was no objection at all.   Appellant requested some special charges on the same subject but the court refused to give them, stating thereon that

he did so because they were embraced in his main charge. The court committed no reversible error in refusing to give his special charges.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

May 29, 1918.

PRENDERGAST, JUDGE.—In his motion for rehearing and brief thereon appellant contends "the evidence is not legally sufficient, . . . aside from that of Willie O'Leary, an accomplice, to warrant a conviction," and that the testimony of the accomplice was not sufficiently corroborated.

The State's theory and contention was that appellant and O'Leary were principals in the theft of the automobile.

The testimony was somewhat fully stated in the original opinion. But it will now be more particularly stated with reference to appellant's contentions.

The evidence establishes that Mr. O'Rourke's car—automobile,—was stolen from him at Cycle Park in the City of Dallas in the night of June 18th. On that same night about 10 or 11 o'clock appellant and O'Leary together appeared at Mr. Hildreth's home at Blue Ridge, in Collin County, with said car. Blue Ridge is more than five miles beyond McKinney from Dallas, perhaps forty or fifty or more miles from Dallas. Early the next morning the car was recovered from appellant and O'Leary at Mr. Hildreth's by an officer, who at the time arrested them for the theft of it. The car was identified and restored to Mr. O'Rourke.

Mr. Hildreth swore he met appellant first in Dallas May 30 at Mr. Burleson's. Appellant himself swore this meeting was three or four days before June 18th—the night the car was stolen. He also swore, "We (O'Leary and himself) left Dallas (for Hildreth's) on the night of the 18th of June," with the car. Hildreth further swore: "I saw him (appellant) up about Blue Ridge on the 19th day of· June this year. This red-headed boy (O'Leary) was with him. Smith introduced the red-headed boy to me as Tom Hawkins; that was at my house. They came up there in a Ford car. I talked to this defendant at that time. . . . He drove up to my house and called me up out of bed and wanted to sell me a Ford car. He says, 'I have brought you the car.' I didn't recognize who he was and I said, 'What car?' He said, 'The car I was telling you about down at Burleson's. I said, 'I don't want any car now; I have a new one,' and he said, 'You would buy a bargain.' He said, 'You told me you would buy it,' and I said, 'You boys come in and we will fix you a bed and I will look at the car in the morning.' He insisted that I take a look at it, and then I went out and seen it wasn't the car recommended to me, and I asked what the price was. They said they wouldn't go to bed, but would drive in my lot, and I said, 'Boys, the barn there is vacant, dover (drive) over there if you want to sleep

in the car and I will look at the car in the morning. So I suspicioned something, and sent my boy up town to the constable early the next morning and he came down there and arrested them. Mr. Smith was driving the car. Up to that time I had never met O'Leary; I had met Smith prior to that time. When I met Smith in Dallas he told me he had a friend that had a car down here that had not been run but a few miles and he would take $275 for it; that was my business down here, to buy a car, and I said, 'Where is your friend?'"

On cross-examination he said he didn't know who drove the car to his house at Blue Ridge. That appellant told him it was a new Ford, had been run only a few miles, "but I know it was an old car and had been run lots from the looks of it." That he didn't know who had possession of the car, "only Smith (appellant) drove it back to the barn, or backed it in the barn, and then drove out to the pasture the next morning to look at the horse I traded him." After appellant himself alone failed to sell Hildreth the car that night apparently as his own, he then and not till then told it was O'Leary's, and falsely stated O'Leary had owned it two months.

According to the positive testimony of O'Leary, he and appellant together, as principals, stole the car. He was corroborated in that, immediately after the car was stolen they were together in possession of it, and together at once took it to Mr. Hildreth's, where appellant himself tried to sell it to Hildreth, whom, in effect, he swore he had staked out to sell it to, and told him, "*I have brought you the car*"; and even as between him and O'Leary, what he said and did showed that *he* was in control of the car and not O'Leary. But in any event, that they were together in possession, as against the true owner and all others.

Appellant in his own testimony flatly contradicted himself and was flatly contradicted by others. In trying to avoid the fact of his control and possession of the car, he first swore O'Leary got him to go with him in the car to Hildreth's, and *agreed to pay him $5 therefor*. Then later he swore, "I was to get nothing out of the proceeds of this car except $5 *that Mr. Hildreth was to pay me for my trouble. O'Leary was not to pay me anything at all.*" O'Leary swore he and appellant were to divide equally what they got for it. Appellant swore he went with O'Leary to Hildreth's with the car, but did not try to sell it—he only introduced O'Leary to Hildreth as Tom Hawkins. As shown above, by Hildreth's evidence, appellant alone at first tried to sell the car to Hildreth, and pressed him to buy that night, and that appellant was in control of the car as to O'Leary. *He* drove it to Hildreth's—at least did not deny doing so, and after *he* failed to induce Hildreth to buy that night *he* ran or backed it into the barn, and next morning *he* drove the car into the pasture to see the horse, etc.

O'Leary, the accomplice, swore he did not steal the car alone, but that he and appellant, before stealing it, agreed to do so, to sell it to Hildreth, whom appellant had staked out to sell it to, and that they went together, and together did steal it, and together took it to Hildreth's.

The evidence was amply sufficient to show that appellant and O'Leary were principals in stealing the car, and that O'Leary was sufficiently corroborated under the statute and decisions thereunder.·

The motion is overruled.

Overruled.